STEBBINS, POST & CO., v. THE UNION PACIFIC RAILROAD COMPANY.

BILLS OF EXCHANGE.—Orders for the payment of money, not payable absolutely, but out of an alleged indebtedness, and not payable to order or for a sum certain, are not bills of exchange.

ACCEPTANCE: PAYMASTER, RAILWAY COMPANY.—The office of a travelling paymaster of a railway company, is simply to pay the indebtedness specified upon the roll; the roll limits his authority, and

he has no power to contract for his principal ; he cannot accept orders drawn upon it.

LACHES.—As between two innocent parties, that one who has been guilty of laches must suffer the wrong of a third.

PAYMENT : CONSIDERATION : MISTAKE.—Money paid by one party to another, without consideration and by mistake, becomes so much money received by him, to the use of the party paying, for which he is accountable on demand.

ERROR to the District Court of Laramie County.

The facts are stated in the opinion.

*Johnson & Potter*, for plaintiffs in error.

The three orders sued on in this case were partly paid by the defendant, who had funds in its possession to pay the balance, and the orders themselves were marked or stamped paid by the defendant's stamp, and retained by the defendant. This action constituted an acceptance of the orders, and an acknowledgment by the defendant, that by taking the orders it was bound to pay the holder thereof the sum of $187.35, the amount of funds in defendant's possession, and the only excuse or defense which defendant could have or make for refusing to pay all or any portion of that amount, would be a claim or account which it had against the holder, and this seems to have been its excuse when the orders were presented. In consideration of the facts, is it not a mere absurdity to affirm that the orders were never accepted?

Bills of exchange, payable on demand, or on a day certain, or on or after any other certain event, need not be presented for acceptance, but only for payment, even to hold the drawer or indorser. 1 Dan. Neg. Insts., 344. So payment of any bill of exchange constitutes all the acceptance necessary. A person who accepts or receives the benefit resulting from the act of an agent, or one acting as or even pretending to be agent, is estopped from disowning the agent's authority or disclaiming a ratification. Story on

Agency, sec. 259; *Woodbury* v. *Larned*, 5 Minn., 339. The defendant in error, having received to its use the sum of $95, the balance on the three orders in controversy, is in no position to deny the agent's authority, or to disaffirm a ratification of his act.

In the answer of the Union Pacific Railroad Company, the plaintiffs in error are charged with an indebtedness to the railroad company in the sum of $95, for money paid by the railroad company upon an order given by one J. G. Childs.

The general principle that money paid under a mistake of fact may be recovered back, is limited in its application to immediate parties, and to cases where there is but a single consideration passing. It does not govern the case in controversy, because the action is between remote parties— payee and acceptor—the acceptor being the drawee. In such a case there are two separate and distinct considerations:

1. That which the acceptor received for his liability, which passes from drawer to acceptor.

2. That which the payee or holder gave for his title.

If the drawee in such cases accepts a bill he will be bound to pay it, although after acceptance he discovers he has accepted it under a mistake of fact, providing, the second consideration above named does not fail also; and that the holder obtained his title without knowledge of the facts that would render the bill impeachable as between the drawer and acceptor, and obtained it before it was overdue. And, of course, the same rule or principle prevails in an action by the drawee or acceptor against the payee or holder, to recover back money paid on the bill. The same issue is presented in either case. *Hoffman* v. *Bank of Milwaukee*, 12 Wall., 181; Byles on Bills, page 124; *Craig* v. *Sibbett & Jones*, 15 Pa. St., 240. *Patterson* v. *Union National Bank*, 52 Pa. St., 206, *Grant & Cory* v. *Ellicott*, 7 Wend., 227.

The plaintiffs in error are charged with negligence in presenting the Childs' order for payment, and on this ground

it is claimed the money paid thereon can be recovered back. As between the acceptor and payee of a bill, the negligence of the payee in presenting an order or bill for acceptance or for payment, constitutes no cause of action. The whole doctrine of presentment of a bill for acceptance, or of a note for payment, is for the purpose of protecting drawers or indorsers. A failure to present a bill for acceptance at a certain time, may release or discharge the drawer from any liability in case the drawee refuses to accept, but such failure, although it may be the result of extreme negligence, can never be taken advantage of by the acceptor, after having accepted or paid the bill. Edwards on Bills and Prom. Notes, marg'l. pages, 387, 388 and 390; Id., 155, 156; Id., 430.

*W. R. Steele,* for defendant in error.

The plaintiffs allege an acceptance of the orders drawn by Oyster, Fuller & Chamberlain, by the defendant; this the defendant denied. It was absolutely necessary for the plaintiffs to establish an unconditional acceptance of the orders by the defendant, in order to entitle them to recover. There is no proof on the part of the plaintiffs, that Mr. S. P. Josselyn, the paymaster, had any authority to bind the defendant by an acceptance of such orders. It was not a power necessary to the performance of his duties in paying the employés, and not a part of the usual and ordinary duties of the paymaster. On the contrary, Mr. Josselyn himself testifies, that he had no authority to accept such orders; that he sometimes paid them as a matter of accommodation, and that the defendant had never, in any manner, accepted the three orders, for the alleged balance due on which the suit was instituted. The plaintiffs failed to show an acceptance by the company, defendant, and the record abundantly supports the finding of the court, that Mr. Josselyn had no authority to accept such orders, and bind the company. But even had the defendant accepted

the orders, it had a right to recover the $95, paid by Mr. Josselyn on the Childs' order in November, 1876.

The offset is for money by the plaintiff, had and received to the use of the defendant.

If the plaintiff had been paid money of the defendant by mistake, the defendant would have a right to recover it back. *Weeden* v. *Mad. R. R.*, 14 Ohio, 563—584; *West* v. *Maddock*, 16 Ohio State, 417; *Milner* v. *Duncan*, 6 Barnwell & Cresswell, 671; *Wheeler* v. *Miller*, 2 Handy, 149; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287; *Garland* v. *Salem Bank*, 9 Mass., 408; *Bank of Commerce* v. *Union Bank*, 3 Comstock, 230; *Ellis* v. *Ohio Trust Co.*, 4 Ohio State, 628; *Wilkinson* v. *Johnson*, 3 Barnwell & Cresswell, 435; *Kelly* v. *Solari*, 9 Meeson & Welsby, 54; *Townsend* v. *Cowdy*, 8 Common Bench, (N. S,) 477; *Dais* v. *Lloyd*, 12 Queen's Bench. 531: *Waite* v. *Leggett*, 8 Cowen, 195; *Wadsworth* v. *Havens*, 3 Wendell, 412.

The plaintiffs were guilty of negligence in reference to the presentation of the Childs order, even had the defendant accepted it. Plaintiffs purchased the order on the 28th day of October, 1876, and did not notify defendant of the existence of the order until the 23d or 24th day of November, 1876. On the 15th day of November, 1876, eighteen days after the order was in existence, defendant having no knowledge of its having been drawn, paid Childs the amount due him. Had plaintiffs notified defendant of the existence of the order, defendant, if it had seen fit to accept the same, could have stopped Childs' pay. The neglect of plaintiffs in that respect, rendered it possible for Childs to draw his pay from defendant, after having sold it to plaintiffs. The only fault attributable to defendant or its paymaster, is in paying the Childs order; it is not denied that nothing was due Childs at the time, nor is it shown in any manner that plaintiffs have been injured by the mistake of Mr. Josselyn. There has been no lack of good faith on the part of the defendant, and the fraud in the case was on the part of Childs. It is an elementary

principle of law, that where one of two innocent persons must suffer by the wrong of a third person, that one shall suffer who has placed it in the power of the third person to do the injury. In this case defendant paid Childs in good faith, without knowledge of the order in possession of plaintiffs; the plaintiffs, by failing to notify defendant of the existence of the order, placed it in the power of Childs to obtain his pay from the defendant. The holder of a bill of exchange, payable on demand, is bound to present the same within a reasonable time. 1 Parsons, Notes and Bills, 338. What is reasonable time for presentment? 1 Parsons, 339, 341, 343, 344, 345 and notes.

The court below found that there was neglect upon the part of the holders in presentment; such finding is abundantly supported by the record.

The finding and judgment of the court below is fully sustained by the facts and law, and should be affirmed by this court.

PECK J.—Stebbins, Post & Co., sued. Their petition alleged that Oyster, Chamberlain and Fuller each drew a bill of exchange for $70, on the defendant, in favor of the plaintiff, the bills being severally dated December 22, and 31, 1876, and January 3, 1877; that on the 20th of the same January they were accepted by the defendant, and a part of their amount then paid; that a balance of $95 remained unpaid, for which, and interest from that date, the defendant was indebted to the plaintiffs. The general denial was pleaded. The case was tried in a district court without a jury, and judgment rendered for the defendant. The evidence does not conflict, and by its direct statements and necessary implications, clearly results in the following facts. Oyster, Chamberlain and Fuller, severally drew orders in favor of the plaintiffs, respectively dated as alleged in the petition; that by Oyster, reading, "Pay Stebbins, Post & Co., or order, $70, due me for breaking in the month of December for Fisk, King, Winckers,

Betts, Crofford and Patterson; deduct $6.50 for one ton of coal;" that by Chamberlain, "Pay to Stebbins, Post & Co., the amount due me for month of December;" that by Fuller, "Pay to the order of Stebbins, Post & Co., $70, value received, and charge the same to my account." The form of address on each order being, "Paymaster U. P. R. R." On the 28th day of October, 1876, one Childs, an express messenger of the defendant, running between Omaha and Ogden, drew an order of that date as follows, addressed in the same form to the paymaster; "Pay to the order of Stebbins, Post & Co., $95, my salary for the month of October, 1876." The four orders were received by the plaintiffs in good faith, and for value, the Childs order at its date. The paymaster's duty was to travel along the defendants' line in a paymaster's car, paying its monthly pay-roll, furnished with funds and the roll accordingly; upon his November trip for 1876, he was so furnished, and the roll specifies $95, as due Childs for his October, 1876, salary. On the 23d or 24th of that November, upon the paymaster's arrival at Cheyenne, the plaintiffs presented the Childs order to him at his car, and he finding nothing against Childs, paid it, took it up, and cancelled it in the usual way, by the defendant's cancellation marked as paid; this presentation was the first notice to the defendant of the existence of the draft. On November 15, 1876, Childs was paid by the defendant at Ogden, through its express department, $95, for the same salary, and left its service, and had afterwards no claim against it; notice of this last-mentioned payment reached the paymaster on December 11, 1876, and afterwards, at Cheyenne, during the month, while on his December trip, he notified the plaintiff of the error in paying the order.

On the 24th day of January, 1877, at Cheyenne, upon the trip of that month, the plaintiff sent the three orders, which are in suit by their clerk, to this paymaster at his car for payment; and they were presented accordingly. The paymaster deducted from $210 the gross of the orders, sundry

coal bills, which the defendant held against the drawers, reducing them to $187.35; also, the Childs order of $95, explaining to the clerk the error of paying it, leaving a balance of $92.35; paid this amount to the clerk, returned to him the Childs order, and received from him the other three, at the same time cancelling them, in the usual way, with the defendant's cancellation, marked as paid. Thereupon, on hearing of the settlement, the plaintiffs called upon the paymaster, notified him of their dissent, tendered a return of $92.35, and demanded a return of the three orders, unless paid in cash in full; he declining, they retained $92.35, under protest; they did not tender a return of the Childs order, but this we treat as an oversight. The plaintiffs proved the orders without producing, or giving notice to produce them, and without explaining their form. They were introduced by the defense, and thus became evidence in support of the general denial.

The Oyster and Chamberlain orders were not bills of exchange; the former because it was not payable absolutely, but out of an alleged indebtedness, and, therefore, upon a contingency; if it would estop the drawer from denying that it describes an absolute indebtedness, it addresses itself to the drawer, as no more than a request to pay, if due; and the latter, because it is not payable to order, or for a sum certain. The Fuller order is a bill of exchange, it being payable to order absolutely, and for a sum certain; hence the plaintiff can recover if at all, for a balance of this order. But upon the whole case the defendant is entitled to judgment.

The office of a travelling paymaster of a railway company, and the appropriate methods of exercising it, are defined in law, and the court will judicially recognize them. He is sent simply to pay the indebtedness specified upon the roll, and his duty is to pay each debt specified upon it to its owner, whether the party to whom it accrued, or to whom it has been transferred. The roll limits his authority, and he has no power to contract for his principal; therefore, he

cannot accept orders drawn upon it, though drawn by the employés, covering simply what the roll specifies as their due, and passed in good faith and for value to third parties. Yet he must pay the orders; therefore, had this paymaster accepted the orders which are in suit, his acceptance would not have bound the company; all that he could do was to pay them.

He did not accept, he only paid; kept strictly within his authority, and performed his duty. The omission of the plaintiffs to notify the defendant of the transfer to them of the Childs October salary, subjects them to its loss, protecting the defendant, which by the omission was lost in the understanding that Childs still controlled it. As between two innocent parties, that one who has been guilty of laches must suffer the wrong of a third. Thus the defendant, having discharged its indebtedness for the Childs salary by the payment of November 15th, and the Childs order having been paid on November 23d or 24th, without consideration and by mistake, the $95 paid upon it became so much money received by the plaintiffs to the defendant's use, for which the former were accountable upon demand. Upon the presentation of the three other orders, the paymaster finding $187.35 to be the balance due upon them, after deduction of the coal bills, and the $95 already in their hands, properly applied that sum upon them, paid the residue, $92.55, took up and cancelled the instruments, returning the $95 order as a voucher belonging to the plaintiffs; in so doing his action being that of the defendant as his principal, and his own as its agent. In one particular he acted short of his duty; he should have charged the plaintiffs two months interest upon the $95, and paid them so much less than $92.35. Our construction of the matter is not influenced by the fact that the plaintiffs' clerk assented to the adjustment, for the assent was unnecessary to the defendant's right, and the paymaster's duty; nor is it influenced by the fact that the plaintiffs in connection with their notice of dissent, did not tender back the Childs or-

der, for if they had, the paymaster's duty would still have been to adhere to the adjustment.

The judgment is affirmed with costs; the five per cent. applicable to dilatory appeals not to be added.

Judgment affirmed.